UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 05-259 (RJL) |
| | : | |
| **MAHMUD RASHID,** | : | |
| Defendant. | : | Sentencing Date: October 10, 2006 |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of sentencing.

### INTRODUCTION

Defendant Mahmud Rashid waived indictment and voluntarily plead guilty to a one count information charging him with wire fraud in violation of 18 U.S.C. § 1343. Specifically, the defendant owned and operated an Exxon franchise at 950 Captiol Street, S.E., Washington, D.C. The franchise was located close to several government buildings and was a convenient and popular gas station in downtown Washington, D.C. Government employees from several agencies often refueled their government vehicles at the station. From approximately 2001 until 2004, the defendant double-billed certain government agencies that used his gas station. The defendant's double-billing scheme debited certain government agencies, without permission, and credited a bank account controlled by the defendant. As a result of the defendant's wire fraud, losses to government agencies exceeded $120,000.00. The United States Probation Office prepared a Presentence

Investigation Report ("PSR") and calculated the offense level as a 14.  The parties agreed up calculation is a guideline offense level of 13.

The United States requests that this Court impose a sentence at the low end of a correctly calculated range under the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.").  The Government believes that applying the applicable Guideline provisions will result in an appropriate sentence for the defendant.  The applicable Guideline provisions take into account the serious nature of the offense conduct at issue in this case and are designed to, and will, yield an appropriate sentence.

The parties agreed that the total offense level for the defendant's conduct is 13 and that he has a criminal history category of I.  Based on these calculations, the guideline range for imprisonment is 12 to 18 months incarceration.  The government requests the low end.

## ARGUMENT

I.  **Sentencing Standards**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Sixth Amendment, as construed in Blakely v. Washington, 532 U.S. 296 (2004), applies to the federal Sentencing Guidelines.  Accordingly, the Supreme Court "imposed a global remedy for the Sixth Amendment difficulties with the Sentencing Guidelines, invalidating their mandatory application and instead requiring district courts to consult them in an advisory fashion."  United States v. Labastida-Segura, 396 F.3d 1140, 1142 (10th Cir. 2005).  Although the judge must also weigh the factors enunciated in 18 U.S.C. § 3553(a), "it is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice to be consulted or overlooked at the whim of a sentencing judge." United States v. Crosby, 397 F.3d 103, 113 (2d Cir.

2005). "Booker requires judges to engage in a two-step analysis to determine a reasonable sentence." United States v. Doe, 412 F. Supp.2d. 87, 90 (D.D.C. 2006).

> [A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

Id. (quoting United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005)). Indeed, in the wake of Booker, our circuit court just held in July that "we agree with our circuit courts that a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness." United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006). This is consistent with Booker holding that a sentencing court "must consult [the] Guidelines and take them into account when sentencing." Booker 543 U.S. at 264.

As for the second step of the Booker sentencing analysis, when weighing the § 3553(a) factors as part of its calculation of an appropriate sentence, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives – that is, that the sentence (1) reflects the seriousness of the offense; (2) promotes respect for the law; (3) provides just punishment; (4) affords adequate deterrence; (5) protects the public; and (6) effectively provides the defendant with needed educational or vocational training and medical care. See 18 U.S.C. § 3553(a)(1) and (2).

**II.     Guideline Calculation**

    **A.     The Government's Objections**

The government has no substantive objection to the Guideline calculation. As discussed below, a sentence of 12 to 18 months incarceration is comparable to other sentences for offenses similar to the defendant's offense, and accurately reflects all of the defendant's circumstances.

**B.      The Defendant's Objections**

The defendant does not object to the Guideline calculations.

**III.    Defendant Argument's argument for probation under the Factors in 18 U.S.C. § 3553(a)(1) and (2)**

The defendant, through counsel, requested a sentence of probation with electronic monitoring, and community service. Def. Mem. at 1. The defendant argues that this sentence is appropriate because the defendant is a first offender, he took early responsibility for his crime by pleading guilty and because of his "unique family circumstances." See Def. Mem. at 10-11.

1.      **First Offender and Early Guilty Plea**

A sentence of probation with electronic monitoring and probation, as requested by the defendant, is inappropriate in this case. Under the Sentencing Guidelines, the defendant's sentencing range falls in Zone D of the Sentencing Table, which requires that "the minimum term . . . be satisfied by a sentence of imprisonment." U.S.S.G. ch. 5, pt. C1.1(f). The official commentary to this section states that when the sentencing guideline range is in Zone D, imprisonment substitutes (such as probation or community service) are not appropriate. See U.S.S.G. ch. 5, pt. C1.1(f), cmt. 8.

The question for the Court is what weight to give the Sentencing Guideline sentencing range. One factor for the Court to consider is whether or not the basis for a departure from the Guideline range is already contemplated within the structure of the Guidelines. Accordingly, the fact that the defendant accepted responsibility for his crime by entering a plea of guilty, and the fact that the defendant does not have a criminal record, should not be considered as a basis for a sentence beneath the Guideline range because these factors are already considered by the Sentencing Guidelines in

determining the defendant's sentencing range. Computation of the defendant's sentencing range reflects his early plea of guilty, pursuant to U.S.S.G. ch. 3, pt. E1.1, and his lack of criminal history, pursuant to U.S.S.G. ch. 4, pt. A1.1. See U.S. v. Dyce, 91 F.3d 1462, 1469 (D.C. Cir. 1996) (noting that "Criminal History Category I is set for a first offender . . . [t]herefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate," and recognizing that a defendant's "remorse/full explanation" is likewise considered in computing the guideline range, so "a further reduction is prohibited for an acceptance of responsibility.")

2. **Unique Family Circumstances**

The defendant argues that his family circumstances, including his wife's emotional and medical dependence on him, as well as his children's well being, warrant a sentence of probation, rather than incarceration as recommended under the Sentencing Guidelines. The Sentencing Guidelines state that family ties and responsibilities "are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. ch. 5, pt. H1.6 (policy statement). Factors such as family circumstances are relevant in departure determinations in "exceptional cases." U.S.S.G. ch. 5, pt. H, intro. comment.

Family ties and responsibilities are characterized as "discouraged" departure factors in Koon v. U.S., 518 U.S 81, 95 (1996) and the Sentencing Guidelines require family ties and responsibilities to be "exceptional" in order to warrant a departure. ; U.S.S.G. ch. 5, pt. H, intro. comment; See also U.S. v. Tucker, 386 F.3d 273, 277 (D.C. Cir. 2004) (recognizing that "family responsibilities" are a "rare, but permitted," ground for departure).

Caselaw interpreting the Sentencing Guidelines provides a solid benchmark for the Court in considering what should qualify as an exceptional circumstance. In U.S. v. Allen, 87 F.3d 1224, 125-26 (11th Cir. 1996), the defendant plead guilty to one count of bank fraud and the applicable sentencing guideline range was 12 to 18 months. Allen, 87 F.3d at 1225-26. The trial court granted a downward departure, sentencing the defendant to one hour incarceration and 36 months of supervised release, based on the fact that the defendant was the primary caretaker for her 70-year-old father who had Alzheimer's and Parkinson's diseases. Id. The downward departure was held improper and the case was remanded. Id. In U.S. v. Rybicki, 96 F.3d 754, 759 (4th Cir. 1996), a downward departure was held improper where the defendant had a clean record and was the primary caretaker for his wife and son, both of whom had medical problems. Furthermore, in U.S. v. Rodriguez-Velarde, 127 F.3d 966, 968-69 (10th cir. 1997), a downward departure was held improper where the defendant had three minor children and his wife was killed in a car accident subsequent to his case.

The Court reversed and remanded the trial court's downward departure in U.S. v. Sweeting, 213 F.3d 95, 96-97 (3d Cir. 2000), where the defendant was the sole supporter of her five children, one of whom had Tourette's Syndrom. The Court in Sweeting stated that ""[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration. Disintegration of family life in most cases is not enough to warrant departures" (citing U.S. v. Gaskill, 991 F.2d 83 (3d Cir. 1993)). Moreover, in U.S. v. Dyce, decided by the D.C. Circuit in 1996, the Court held that a downward departure was inappropriate where the defendant was a single mother of three young children, one of whom was a newborn, because the defendant lived with her parents, sister, and the children's father, who were employed

and could care for the children. U.S. v. Dyce, 91 F.3d 1462, 1467 (D.C. Cir. 1996). Lastly, in U.S. v. Leandre, 132 F.3d 796, 807-08 (D.C. Cir. 1998), the Court refused to grant a downward departure from the sentencing guidelines where the defendant was the single father of two young children who might be placed in foster care after the defendant's incarceration.

Because the defendant's family circumstances are not "exceptional", although sad and disruptive for those who depend on the defendant, the defendant's family circumstances are a reason to sentence on the low end of the Sentencing Guideline range rather than outside of the range.

**IV.    Application of the Factors in 18 U.S.C. § 3553(a)(1) and (2)**

    **A.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

As the defendant concedes, defrauding the government is a serious offense. The fact that the defendant took early responsibility for his crime, and is a first offender, reflects the agreement that the guideline offense level is 13. While the defendant has family obligations and responsibilities, these circumstances are not "exceptional," within the meaning of the Sentencing Guidelines, and do not warrant a sentence of less than 12 to 18 months incarceration.

The goal of the Sentencing Guidelines is to "move the sentencing system in the direction of increased uniformity . . . [so that] offenders who engage in similar real conduct would receive similar sentences." U.S. v. Booker, 543 U.S. 220, 254-55 (2005). In Booker, when the Court announced that the Guidelines were no longer mandatory, the Court adopted an approach that would "maintain a strong connection between the sentence imposed and the offender's real conduct - a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." Booker, 543 U.S. at 246.

7

A sentence within the guideline range is consistent with the goal of sentencing uniformity as stated in Booker, and there are no factors warranting a downward departure from the "heartland." See U.S.S.G. ch. 1, pt. A, cmt. 4(b) (defining the "heartland" as "a set of typical cases embodying the conduct that each guideline describes," and noting that "[w]hen a court finds an atypical case . . . the court may consider whether a departure is warranted").

    **B.**    **The Sentence Imposed Should Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

The defendant's fraudulent activities continued for three years and resulted in over $100,000 in losses to various government agencies. PSR at 5. The defendant's crime adversely affects society and the defendant took deliberate steps to target Voyager Credit Card users to evade detection. Furthermore, the defendant misappropriated a patron's pin number so that he could bypass authorization procedures for Voyager Credit Cards. PSR at. 5. A sentence pursuant to the guideline's recommendation of 12 to 18 months incarceration will send a general deterrence message that society does not accept crimes of fraud, regardless of the lack of violence and individual victims. Not only will incarceration provide a just punishment for the crime, but it will also encourage the defendant to return to being a law abiding citizen whose occupation does not offend the law.

    **C.**    **The Sentence Imposed Should Afford Adequate Deterrence to Criminal Conduct**

In order to deter the defendant from committing fraudulent crimes in the future, the defendant must face the consequences of his criminal actions. The sentence requested by the defendant, probation and community service, will not have a noteworthy impact on the defendant's life sufficient to deter him from repeating criminal activity. By contrast, a period of incarceration,

as recommended by the Sentencing Guidelines, will require the defendant to spend time away from his family.  Separation from his family will have a deterrent impact on the defendant that could not be achieved by allowing the defendant to remain at home and continue his day-to-day activities.

      **D.**      **The Sentence Imposed Should Protect the Public From Further Crimes of the Defendant**

Crimes against the government have adverse affects on the community.  Specifically, the local agencies defrauded by the defendant, D.C. Department of Public Works and D.C. Water and Sewer Authority, work to better the quality of life for Washington, D.C. area residents.  The money lost by these agencies as a result of the defendant's wire fraud is money lost to the community, decreasing the resources available for these agencies to do their jobs and serve the public interest.  The defendant chose to target government agencies that utilized the Voyager Fleet Card program so that the defendant could conceal his fraudulent activities.  PSR at 5.  To further his crime, the defendant misappropriated a patron's pin number to avoid detection by Voyager Credit Card's anti-fraud procedures.  Because the defendant took advantage of his patrons' trust and indirectly harmed the community, a sentence of 12 to 18 months incarceration is just and appropriate.

      **E.**      **The Sentence Imposed Should Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

The defendant in this case had many advantages.  The defendant is an educated man who received a college certificate from Dhaka College in Bangladesh, and partially completed studies in pre-med.  PSR at 8. He needs only the will to make a living by honest means and not any particular additional training or education.

**V.**      **Restitution**

The defendant does not contest the mandatory order of restitution.

## CONCLUSION

Wherefore, based upon the foregoing, the Government respectfully requests that the Court impose a sentence which is at the low end of a correctly calculated range under the U.S. Sentencing Guidelines.

                          Respectfully submitted,
                          JEFFREY A. TAYLOR
                          United States Attorney
                          D.C. Bar Number 498610

BY:

                          _____
                          JOHN CARLIN
                          Assistant United States Attorney
                          555 4TH Street, N. W.
                          Washington, D.C. 20530
                          (202) 353-2457